IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WANDA CONNELLY | : | CIVIL ACTION |
| | : | |
| v. | : | No. 13-5934 |
| | : | |
| RELIANCE STANDARD LIFE INSURANCE COMPANY | : : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                          **June 2, 2014**

      Plaintiff Wanda Connelly brings claims for long-term disability benefits under Section 502(a)(1)(B) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B). She alleges Defendant Reliance Standard Life Insurance Company (Reliance) wrongly denied disability benefits that she was entitled to receive under the long-term disability plan sponsored by her employer, Fulton Financial Corporation. Because the Court finds Reliance's decision to terminate Connelly's benefits was arbitrary and capricious, the Court will grant Connelly's summary judgment motion and deny Reliance's summary judgment motion.

**BACKGROUND**

      Connelly worked for Fulton Financial Corporation as a scanning and indexing specialist. As an employee benefit, Fulton sponsored a long term disability plan (the Plan) and purchased a life insurance policy from Reliance to fund the plan and pay benefits under it (the Policy). The Policy provided a monthly benefit to participants if they are totally disabled, meaning "that as a result of Injury or Sickness . . . an Insured cannot perform the material duties of his/her Regular Occupation." Policy 2.1; Administrative Record at 10 (hereinafter A.R.).

      The Position Description submitted by Fulton states the scanning and indexing specialist position requires "preparation, scanning and indexing of all loan packets associated with all

Customer Mortgage and Commercial Loan serviced by the Loan Operations Department." A.R. at 208. Essential duties include preparation of loan packets for scanning, scanning loan packets, indexing scanned batches using specific software, preparing loan packets for permanent retention, assisting in training of applicable Fulton personnel on imaging procedures, proving assistance to affiliate banks, coordinating a back-filing project of current inventory of 85,000 loans, working with other departments to provide immediate back-file solutions as loans are requested, distributing reports for loan applications, and mailing loan statements. A.R. at 208-09. Fulton describes the work environment as "occasionally hectic with occasional high stress." A.R. at 210. In her application for long term benefits, Connelly described her job as scanning and indexing documents, filing, looking for documents, answering the phone, completing file room requests, mailing payments, making mortgage files, and checking mortgage loans. A.R. at 192.

On November 21, 2011, Connelly ingested a large quantity of oxycodone and Xanax. She was hospitalized and diagnosed with depression, panic disorder, and agoraphobia (extreme or irrational fear of crowded spaces or enclosed public places). Following this incident, she suffered from panic attacks, anxiety, depression, paranoia, and an inability to perform activities of daily living. Reliance approved her claim for disability benefits on June 28, 2012, based on a review of her medical records by an in-house medical personnel, Nurse C. Ricci, and paid Connelly disability benefits totaling $1,435.09 per month from May 19, 2012, until November 19, 2012.

On November 1, 2012, a registered nurse, Nurse Patricia Toth, reviewed Connelly's medical records on Reliance's behalf and determined Connelly no longer suffered from a psychiatric impairment. In forming her opinion, Nurse Toth relied solely on medical records and

did not physically examine Connelly.[1] On November 8, 2012, Reliance terminated Connelly's claim for disability benefits.[2]

Connelly appealed the termination decision on March 27, 2013, and submitted additional medical records to Reliance. Reliance denied her appeal on July 2, 2013, basing its decision on a peer review of the medical records conducted by a board certified psychiatrist, Dr. Michael A. Rater, who concluded, also without a physical exam of Connelly, that Connelly could have returned to work as of November 2012. After exhausting her administrative remedies, Connelly filed a Complaint in the Court of Common Pleas of Lancaster County, Pennsylvania on August 27, 2013, alleging Reliance's decision to terminate her benefits was arbitrary and capricious and in violation of her right to receive benefits under ERISA. Reliance removed the case to this Court on October 9, 2013.

During the time period before and after her November 2011, hospitalization, Connelly was being treating by her personal physician, Dr. Julie Jones. The administrative record contains encounter notes from Dr. Jones beginning in September 2011, when Connelly visited Dr. Jones for injuries she suffered in a car accident. After Connelly's hospitalization, Dr. Jones also treated Connelly for anxiety, depression, and insomnia. On April 12, 2012, Dr. Jones noted that while Connelly has improved somewhat, there were still significant stressors at home. A.R. at 284. Dr. Jones reported Connelly was "still feeling somewhat fragile," but also that she was "more

---

[1] The Policy reserves to Reliance the right to have a claimant "interviewed and/or examined: (1) physically; (2) psychologically; (3) psychiatrically; to determine the existence of any Total Disability which is the basis of the claim. This right may be used as often as it is reasonably required while a claim is pending." Policy 6.1; A.R. at 15.

[2] On December 10, 2012, the Social Security Administration also denied Connelly's claim for disability benefits. A.R. at 362. The Administration noted, however, that Connelly's condition keeps her from her job as a scanning and indexing specialist, but does not keep her from doing work that is "less mentally demanding." *Id.*

animated than initially." A.R. 284-85. On May 16, 2012, Dr. Jones noted Connelly "got tearful" when discussing the multiple stressors in her life, and it was her opinion Connelly was not ready to return to work. A.R. 287-89. In September 2012, Dr. Jones wrote although Connelly had been due for an appointment in July, her COBRA benefits had not started so she could not return until September. A.R. at 354. She described Connelly's mood as "stable," and discussed some of the coping mechanisms Connelly performed when she got anxious. *Id.* Dr. Jones also stated "Wanda's depression seems improved and stable. Her work stressors are removed . . . . She is still a bit fragile with stress at home, but is coping much better than last year." A.R. at 355. However, according to Dr. Jones, Connelly began to decline after the September 2012, visit. Dr. Jones stated in the encounter notes for January 2013, that since November 2012, Connelly's symptoms of major depression had returned. A.R. at 372. Dr. Jones described Connelly as "very fatigued . . . stressed and anxious, she cannot do more than one thing at a time." *Id.* Dr. Jones noted, "Wanda's depression is significantly worse since our last visit." A.R. at 373, and "[s]he can answer questions logically and coherently, but she does seem a bit withdrawn." A.R. at 372. She concluded "[i]t is clear to me she is unable to work at this point." A.R. at 373.[3]

In a March 2013 letter,[4] Dr. Jones stated in the fall of 2011, Connelly "was not functioning and was exhibiting vegetative symptoms including decreased concentration, lack of interest in activities, feelings of sadness and hopelessness, and insomnia." A.R. at 371. Dr. Jones explained that Connelly's depression gradually improved over the following year, but "[i]n

---

[3] Dr. Jones explained she had previously lowered Connelly's prescription Paxil, an antidepressant, from fifteen milligrams to ten milligrams because when Connelly was on the higher does, she experienced muscle spasm of her extremities. A.R. at 372. At the January 2013, visit, however, Dr. Jones returned Connelly's prescription to fifteen milligrams.

[4] This letter is undated, but has a fax date of March 19, 2013. Connelly refers to this document as Dr. Jones's March 2013 report. In the letter Dr. Jones states she has been treating Connelly for a year and a half for major depression, and therefore, Dr. Jones most likely wrote this letter in March 2013. Thus, the Court will also refer to this letter as Dr. Jones's March 2013 letter.

November of 2012 she experienced another major depressive episode," and that since November 2011, "it is highly unlikely that she could function in any job capacity," because "[s]he remains depressed, anxious, and unable to concentrate." *Id.*

Connelly also began seeing a therapist, Joni Brandt, in January 2012, two months after her hospitalization, but stopped attending sessions from May until September 2012, because she did not have medical coverage. Connelly resumed therapy sessions with Ms. Brandt in September 2012, two months before Reliance terminated her benefits. On September 6, 2012, Ms. Brandt reported in her chart notes that Connelly's medications had not changed since their last meeting in May 2012, but Connelly was still easily overwhelmed and was experiencing high anxiety and difficulty focusing and multitasking. A.R. at 384. On October 4, 2012, Ms. Brandt noted that although Connelly was still experiencing high anxiety and was easily overwhelmed, she "[r]eports good self care, pacing self, getting healthier." A.R. at 384. On November 20, 2012, around the time period Dr. Jones claims Connelly suffered a second depressive episode, Ms. Brandt noted Connelly reported her "mood has been vacillating" and she "continues to get overwhelmed easily." A.R. at 386. Ms. Brandt described Connelly as "tearful throughout session, engaged, good eye contact." *Id.* She also wrote that Connelly was going to talk with Dr. Jones about changing her medication. *Id.* On December 13, 2012, Ms. Brandt described Connelly as "tearful" and noted she reported feeling "foggy—like she is swimming." A.R. at 386. On January 3, 2013, Ms. Brandt wrote a letter stating that Connelly "continues to experience significant emotional distress, difficulty with concentration and multi-tasking. She reportedly experiences panic attacks of moderate intensity several times a week." A.R. at 360. Ms. Brandt did not, however, state in this letter that Connelly was "disabled" or unable to work as of November 2012.

**DISCUSSION**

A motion for summary judgment will only be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted). In determining whether to grant summary judgment, the court "must view the facts in the light most favorable to the non-moving party, and must make all reasonable inferences in that party's favor." *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). The court applies the same standard when deciding cross-motions for summary judgment as the standard applied when only one party has filed a summary judgment motion. *See Selected Risks Ins. Co. v. Schwabenbauer*, 540 F. Supp. 22, 24 (E.D. Pa. 1982).

The standard of review of Reliance's decision to terminate Connelly's benefits is arbitrary and capricious, also known as a deferential abuse of discretion standard.[5] An administrator's decision is arbitrary and capricious only "if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993) (citations and internal quotation marks omitted). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 710 (6th Cir. 2000) (citation omitted). Although the arbitrary and capricious standard is highly deferential, the court

---

[5] By Order of December 17, 2013, this Court found the standard of review governing the case is arbitrary and capricious.

must still consider the quality and quantity of the medical evidence and the opinions on both sides of the issues, so as to avoid rendering courts "nothing more than rubber stamps for any plan administrator's decision." *Glenn v. MetLife*, 461 F.3d 660, 674 (6th Cir. 2006), *aff'd sub nom. Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008) (citation omitted); *see also Foley v. Int'l Bhd. of Elec. Workers Local Union 98 Pension Fund*, 91 F. Supp. 2d 797, 805 (E.D. Pa. 2000). However, the court is limited to the evidence before the administrator at the time he reviewed and decided the claim. *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997). In evaluating the administrator's decision, a court must review two aspects: (1) "structural concerns regarding how the particular ERISA plan was funded," and (2) "various procedural factors underlying the administrator's decision-making process." *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011).

The structural inquiry in an arbitrary and capricious review focuses on the financial incentives or conflicts of interest created by the plan's organization. In *Metropolitan Life Insurance Co. v. Glenn*, the Supreme Court held a reviewing court, in determining whether the plan administrator had abused its discretion in denying benefits, should consider the conflict of interest arising from the dual role of an entity that acts as both an ERISA plan administrator and a payer of plan benefits. 554 U.S. at 112; *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In *Glenn*, as in the case here, the plan administrator was not the employer itself, but rather a professional insurance company. *Glenn*, 554 U.S. at 114. When this conflict exists, the standard of review does not change, but the reviewing court must consider the conflict and its case-specific importance to determine if the administrator has abused his discretion. *Id.* at 115-16.

The procedural inquiry, on the other hand, "focuses on how the administrator treated the particular claimant" and if irregularities in the review process cast doubt on the administrator's impartiality. *Miller*, 632 F.3d at 845 (quoting *Post v. Hartford Ins. Co.*, 501 F.3d 154, 162 (3d Cir. 2007)). Examples of procedural anomalies that suggest arbitrariness include: (1) reversing a decision to award benefits without new medical evidence to support the change in position, (2) relying on the opinions of non-treating over treating physicians without reason, (3) conducting self-serving paper reviews of medical files, (4) failing to address all relevant diagnoses before terminating benefits, (5) relying on favorable parts while discarding unfavorable parts in a medical report, and (6) denying benefits based on inadequate information and lax investigatory procedures. *See Harper v. Aetna Life Ins. Co.*, No. 10-1459, 2011 WL 1196860, at *2 (E.D. Pa. Mar. 31, 2011) (citations omitted) (citing cases from the Court of Appeals for the Third Circuit).

With regard to reports by personal physicians, while ERISA "does not require that plan administrators give the opinions of treating physicians special weight, courts must still consider the circumstances that surround an administrator ordering a paper review [from a non-treating physician]." *Post*, 501 F.3d at 166 (citation omitted); *see also Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003). Plan administrators may not arbitrarily refuse to credit a claimant's reliable evidence, which may include a treating physician's opinion, but a court cannot "require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Nord*, 538 U.S. at 834.

With these standards in mind, the Court turns to Reliance's decision to terminate Connelly's benefits. Under the Policy, Connelly could only receive benefits if she proved she

suffered from a "Total Disability," which means "that as a result of an Injury or Sickness . . . an Insured cannot perform the material duties of his/her Regular Occupation." A.R. at 10. The Policy defined "Regular Occupation" as "the occupation the Insured is routinely performing when Total Disability begins," but the Court must "look at the Insured's occupation as it is normally performed in the national economy, and not the unique duties performed for a specific employer in a specific locale." *Id.*[6]

Therefore, to qualify for benefits, Connelly was required to demonstrate her depression prevented her from performing as a typical scanning and index specialist.[7] Reliance asserts it

---

[6] In *Lasser v. Reliance Standard Life Insurance Co.*, the Third Circuit held the unambiguous plain meaning of "Regular Occupation" is "the usual work that the insured is actually performing immediately before the onset of disability." 344 F.3d 381, 386 (3d Cir. 2003). However, *Lasser* does not apply here because the insurance policy in that case left the phrase "Regular Occupation" undefined, whereas here, the Policy defined Regular Occupation as that which is normally performed in the regular economy. *See, e.g.*, *Glunt v. Life Ins. Co. of N. Am.*, No. 11-3105, 2012 WL 205882, at *6 (E.D. Pa. Jan. 24, 2012).

Connelly claims because Reliance did not distinguish between her job and occupation when initially denying her claim, Reliance cannot justify a denial of benefits based on Connelly's ability to perform her occupation, not necessarily her job, in its decision on her appeal. However, the record shows Reliance adhered to the contractually defined standard for Regular Occupation throughout its review of Connelly's claim. In the letter Reliance sent to Connelly to initially discontinue benefits dated November 8, 2012, Reliance defined "Totally Disabled" according to the Policy language and stated that based on the information in her claim file, "we were able to determine that you are capable of performing your occupation, sedentary work activity." A.R. at 168. In the letter denying Connelly's appeal dated July 2, 2013, Reliance again provided the Policy's definition of "Totally Disabled" and concluded "[a]fter careful review and consideration, we continue to find that your client's complaints and difficulties do not equal total impairment . . . we are unable to find support of an impairment severe enough to totally preclude work capacity as of November 2012 and beyond." A.R. at 179. Thus, in its denial of her claim, Reliance made clear its finding that Connelly could perform the material duties of her occupation, not necessarily of her specific job.

[7] The Policy provides for continuing periodic payments "for each period as [Reliance] becomes liable on at least a monthly basis." A.R. at 14. Reliance made monthly payments to Connelly, and therefore, Reliance was only obligated to continue paying disability benefits if Connelly produced proof of a continuing disability for each period of payment, in this case monthly. *See e.g.*, *Moorman v. Rohm & Haas Long Term Disability Plan*, No. 04-CV-3689, 2006 WL 1083603, at *7 (E.D. Pa. Apr. 20, 2006).

denied Connelly's claim because although she may not have been able to perform her specific job given the stressful work environment, she was capable of performing the duties of her occupation as a scanning and index specialist. In other words, she could still work in her occupation, but for another employer. The Court finds Reliance's denial of benefits was arbitrary and capricious due to both structural and procedural factors of the administrator's decision. Based on the record, there is no substantial evidence from which Reliance could have reasonably concluded Connelly was not disabled from her job as of November 2012.

First, Reliance, as insurer for the Plan, both funded and administered the award of disability benefits. This structural conflict is a factor the Court must weigh in its evaluation of the administrator's decision, but it does not change the standard of review. Thus, the Court considers this factor in light of the procedural defects of the administrator's decision.

As to the procedural defects, the Court finds the administrator's decision was arbitrary and capricious because Reliance failed to conduct an in-person exam for a psychiatric disability, unreasonably relied upon the opinion of a non-treating physician, relied upon favorable parts while arbitrarily ignoring unfavorable parts of the notes and letters from Connelly's treating physician and therapist, and changed its opinion regarding Connelly's disability without any corresponding change in Connelly's medical condition.[8]

---

[8] Connelly asserts Dr. Rater did not review additional medical records when completing his peer review for Connelly's appeal on June 4, 2013, and concluding that Connelly was able to return to work as of November 2012. A.R. at 401. Specifically, Dr. Rater did not review Dr. Jones's January 2013, patient notes, Dr. Jones's March 2013, letter, or Ms. Brandt's January 3, 2013, report and treatment notes. Reliance admits it did not originally provide all of the medical records to Dr. Rater. Reliance did, upon realizing its mistake, send the additional records and requested Dr. Rater amend his peer review. Dr. Rater included an addendum to his initial review on June 18, 2013, and stated in the recommendation section of his report, "a review of the additional records from Joni Brandt, MS does not change my prior opinion." A.R. at 414. Connelly asserts because Dr. Rater only commented on the extra report from Ms. Brandt, and did not indicate whether or not he addressed the additional medical records from Dr. Jones, the plan administrator cannot rely upon his recommendation.

In his peer review, Dr. Rater found Connelly was able to return to work as of November 2012, because her "capacity to manage stress is better," and even though she reported trouble concentrating, "she is not noted to have cognitive problems" or "behavioral problems in the office." A.R. at 409. Dr. Rater acknowledged Connelly reported she had panic attacks three times per week, but dismissed this claim because "these are not observed." *Id.* Dr. Rater commented that Connelly has learned coping techniques to help with her symptoms and her mental status has been documented to improve. *Id.* Reliance also points out that Dr. Rater is a board certified psychiatrist, whereas the reports upon which Connelly relies are from her family doctor and a therapist.

Reliance was not required to employ a physician to conduct an independent in-person exam of Connelly, even though it had a right to do so, simply because her claim involved an alleged mental impairment. *See Gannon v. Aetna Life Ins. Co.*, No. 05-2160, 2007 WL 2844869, at *13 n.6 (S.D.N.Y. Sep. 28, 2007). However, Connelly suffered from depression and anxiety, which presents mainly through subjective symptoms, i.e., Connelly's thoughts and feelings.[9] In

---

The Court disagrees and finds Dr. Rater did include a review of Dr. Jones's records in his addendum. In the clinical summary portion of his addendum, he specifically summarized Dr. Jones's January 2013, encounter notes and mentioned Dr. Jones's letter which stated Connelly experienced another major depressive episode in November 2012. A.R. at 413-14. Although the Court disagrees with Dr. Rater's ultimate conclusion regarding Connelly's capacity to return to work, it appears he read Dr. Jones's reports even if he did not specifically mention Dr. Jones's reports in the recommendation section. A.R. at 414.

[9] Connelly contends Reliance improperly required objective evidence of a subjective condition, and because depression is subjective, it cannot be proven by objective evidence. In *Mitchell v. Eastman Kodak Co.*, the Third Circuit found an administrator's denial of long term disability benefits based on the claimant's failure to tender "objective medical evidence" that he was unable to engage in any substantial gainful work due to chronic fatigue syndrome was arbitrary and capricious. 113 F.3d 433, 442 (3d Cir. 1997). The Court interpreted the administrator's decision to be that the claimant had failed to submit clinical evidence establishing the etiology of his chronic fatigue and loss of concentration that disabled him from working. *Id.* The Court found that given that there was no "dipstick" laboratory tests for the claimant's condition, the

11

*Sheehan v. Metropolitan Life Insurance Company*, the district court noted that because a psychiatrist typically treats a patient's subjective symptoms, "[c]ourts discount the opinions of psychiatrists who have never seen the patient." 368 F. Supp. 2d 228, 255 (S.D.N.Y. 2005). When a psychiatrist evaluates a patient's mental condition, his opinion and diagnosis depend greatly on interviewing and spending time with the patient. *Id.* Although the district court in *Sheehan* conducted a de novo review of an administrator's decision, its decision highlights the inadequacy of relying solely upon a record review when determining benefits for someone claiming a mental disability. *See also Smith v. Bayer Corp. Long Term Disability Plan*, 275 F. App'x 495, 508 (6th Cir. 2008); *Winkler v. Metro. Life Ins. Co.*, 170 F. App'x 167, 168 (2d Cir. 2006).

In this case, the reviewing nurse and Dr. Rater did not perform an in-person exam themselves. The fact that these medical professionals did not examine Connelly is a factor in analyzing the differences between their opinions and those of Connelly's treating physician and therapist who observed Connelly on multiple occasions in the year and half following her

---

claimant could not be required to make a showing of clinical evidence of such etiology as a condition for eligibility for benefits. *Id.* at 443.

There is a distinction, however, between requiring objective proof that the claimant has a condition with objective proof that a particular condition is disabling. While it is improper to require objective proof of some diagnoses, it is not improper to require objective proof of claimed limitations. *See Wernicki-Stevens v. Reliance Standard Life Ins. Co.*, 641 F. Supp. 2d 418, 426 (E.D. Pa. 2009); *see also Gibson v. Hartford Life And Acc. Ins. Co.*, No. 206-3814, 2007 WL 1892486, at *13 (E.D. Pa. June 29, 2007) (distinguishing the denial of benefits in that case from the situation in *Mitchell* because the decision was not based on whether the plaintiff's problems were objectively verifiable or the absence of a known etiology of plaintiff's symptoms); *Balas v. PNC Fin. Servs. Grp., Inc.*, No. 10-249, 2012 WL 681711, at *10 (W.D. Pa. Feb. 29, 2012) (explaining "courts within the Third Circuit have held that it is not an abuse of discretion to require objective evidence that a condition . . . is sufficiently disabling," even if that condition can only be diagnosed by subjective evidence).

Here, the Court finds Reliance did not require objective proof of Connelly's depression; Reliance did not demand an identification of the etiology of Connelly's symptoms nor did it consider an absence of etiological findings for depression in its conclusion Connelly was not totally disabled. The Court finds, however, the administrator's decision that the record lacks objective proof of Connelly's condition disability is unreasonable and unsupported by substantial evidence, given the reports by both Dr. Jones and Ms. Brandt regarding Connelly's behavior and symptoms during in-person sessions and Connelly's report of frequent panic attacks.

hospitalization. In cases in which "the insured's treating physician's disability opinion is unequivocal and based on a long-term physician-patient relationship, reliance on a non-examining physician's opinion premised on a records review alone is suspect and suggests that the insurer is looking for a reason to deny benefits." *Harper*, 2011 WL 1196860, at *10 (citing *Kaufmann v. Metro. Life Ins. Co.*, 658 F. Supp. 2d 643, 650 (E.D. Pa. 2009)). Reliance's plan reserved to the company the right to order physical, psychological, and psychiatric examinations for Connelly. *See* Policy at 6.1; A.R. at 15. The failure of the administrator to take advantage of that option, especially when faced with a claim based on mental and emotional instability and a treating physician's report that Connelly could not work, raises significant questions about the thoroughness and accuracy of the benefits determination. *See Smith v. Bayer Corp. Long Term Disability Plan*, 275 F. App'x 495, 508 (6th Cir. 2008). An examination would have clearly helped the plan administrator better evaluate the severity of Connelly's symptoms.

In addition, Dr. Rater in his original peer review dismissed Connelly's report of panic attacks occurring three times per week because they were not observed. A.R. at 401. Ignoring Connelly's complaint of panic attacks because they were not observed during a session with her physician or therapist is unreasonable, and an administrator's reliance on this reasoning is equally unreasonable. According to the Mayo Clinic, a panic attack "is a sudden episode of intense fear that triggers severe physical reactions when there is no real danger or apparent cause." *Panic Attacks and Panic Disorder*, Mayo Clinic (May 31, 2012), http://www.mayoclinic.org/diseases-conditions/panic-attacks/basics/definition/con-20020825. Those who suffer from panic attacks feel as if they are "losing control, having a heart attack, or even dying." *Id.* These attacks can be recurrent and unexpected, and those who suffer from them can live in "constant fear of another attack." *Id.* Simply because Connelly did not happen to have a panic attack while in the

presence of her therapist or treating physician does not mean she did not suffer from them. Panic attacks would clearly prevent her from performing the basic duties of her occupation.

Further, while a plan administrator may reach a conclusion that conflicts with the claimant's treating physicians, he may not arbitrarily disregard medical evidence. *See Nord*, 538 U.S. at 830-31. Based on the evidence in the record, Reliance's decision to credit the unsupported opinions of Nurse Toth and Dr. Rater over those of Dr. Jones and Ms. Brandt was unreasonable. For example, as stated in Reliance's Claim Report, on June 20, 2012, Nurse Ricci initially found Connelly to be globally impaired based on Dr. Jones's April 2012, encounter notes documenting Connelly's stress and Ms. Brandt's notes of Connelly's stress, anxiety, depression, and trouble multi-tasking. A.R. at 74. However, the June 23, 2013, Claim Report entry regarding Connelly's final appeal, ignored (1) Dr. Jones's January 10, 2013, encounter notes stating that Connelly was not able to work at that point, (2) Dr. Jones's March 2013, letter stating Connelly suffered another depressive episode in November 2012, and has been unable to work since November 2011, and (3) Ms. Brandt's January 2013, report stating Connelly continued to suffer significant emotional distress, panic attacks, and difficulty concentrating and multi-tasking. Instead, basing its decision almost completely on Dr. Rater's review, the Claim Report stated, "[t]here is no documentation from the claimant and/or her providers to support total impairment from her own occupation as of November 2012 and beyond." A.R. at 89. Although Dr. Rater provided summaries of Dr. Jones's and Ms. Brandt's notes in his peer review, he did not explain why he disregarded Dr. Jones's conclusion that Connelly could not return to work, and Reliance's almost total dependence on the report from this single independent consultant is unreasonable. As another example, in its initial termination decision, Reliance relied upon Dr. Jones's statement in her September 2012, encounter notes that

Connelly's mood was "stable" and she was "coping better than last year," but its decision on appeal ignored Dr. Jones's explanation that, even though she did show some improvement, Connelly's condition declined rapidly in November 2012. In addition, in its summary judgment motion, Reliance argued repeatedly Ms. Brandt did not state in her January 2013, report that Connelly could not return to work, but does not mention Dr. Jones's statement at that same time that Connelly was unable to work. Reliance's selectivity in the medical evidence it accepted and rejected (or ignored), and its refusal to credit Connelly's reliable evidence is arbitrary and capricious. *See Edgerton v. CNA Ins., Co.*, 215 F. Supp. 2d 541, 551 (E.D. Pa. 2002) (finding an administrator's decision to be arbitrary and capricious because the administrator accepted the treating physician's diagnosis but rejected "his prognosis as to the practical, functional effects of that diagnosis, without providing a reason"); *see also Harper*, 2011 WL 1196860, at *11 (E.D. Pa. Mar. 31, 2011). Reliance was permitted to credit its own reliable evidence over the statements of treatment providers, but its selective reliance on only portions of Connelly's evidence and almost total dependence on the opinion of one independent consultant who never personally examined Connelly was unfair and unreasonable. *See, e.g.*, *Winkler v. Metro. Life Ins. Co.*, 170 F. App'x 167, 168 (2d Cir. 2006) (finding an administrator's reliance on consultants who never personally examined the plaintiff to be arbitrary and capricious).

Lastly, there is no new medical evidence to support Reliance's change in position regarding Connelly's ability to work. During Reliance's initial review of Connelly's disability in June 2012, Nurse Ricci concluded Connelly was globally impaired due to a "psychiatric impairment." A.R. at 74. As explained above, in arriving at her conclusion, Nurse Ricci relied upon Ms. Brandt's chart notes describing Connelly's high stress, anxiety, depression, difficulty multi-tasking and coping with stress of job responsibilities, and attention deficit symptoms. *Id.*

Nurse Ricci also described Dr. Jones's statements regarding Connelly's anxiety and depression and the fact she was feeling overwhelmed. *Id.* Nurse Ricci even acknowledged Dr. Jones noted that Connelly was doing better and visiting a therapist, but Nurse Ricci still concluded Connelly was disabled. It is unclear, how Reliance could find Connelly was no longer disabled during Connelly's appeal given that Dr. Jones informed Reliance that as of November 2012, Connelly was still depressed, and in November 2012, Ms. Brandt noted Connelly continued to get overwhelmed easily and was tearful throughout the session. Reliance cannot rest on the single fact Connelly showed some improvement prior to November 2012; she also showed improvement in January 2012, and Reliance still granted her benefits based on her treating physician's and therapist's notes of her poor condition.

Reliance points to no reliable evidence that conflicts with Dr. Jones's opinion Connelly could not work as of November 2011, Ms. Brandt's report on November 2012, that Connelly's mood was vacillating and she was overwhelmed easily, or Ms. Brandt's January 2013, report that Connelly continued to suffer from emotional distress and panic attacks. The administrative record contains no reliable evidence to support the conclusion Connelly was able to return to her previous occupation in November 2012. In light of the structural conflict of interest and the procedural defects in the administrator's decision, the Court finds the administrator's decision to terminate Connelly's benefits was arbitrary and capricious.

Because Reliance's decision to terminate Connelly's benefits was the result of an arbitrary and capricious decision, it is appropriate to retroactively award benefits and return Connelly to the status quo she enjoyed before the termination of her benefits. *See Miller*, 632 F.3d at 856-57 ("In the termination context . . . a finding that a decision was arbitrary and capricious means that the administrator terminated the claimant's benefits unlawfully.

Accordingly, benefits should be reinstated to restore the status quo."). The Court finds as of November 8, 2012, the date her benefits were terminated, Connelly was totally disabled.

Connelly also seeks interest on the unpaid benefits. "[A]n ERISA plaintiff who prevails under § 502(a)(1)(B) in seeking an award of benefits may request prejudgment interest under that section as part of his or her benefits award." *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 208 (3d Cir. 2004). Prejudgment interest should be granted "unless exceptional and unusual circumstances exist making the award of interest inequitable." *Id.* (quoting *Anthius v. Colt Indus. Operating Corp.*, 971 F.2d 999, 1010 (3d Cir. 1992)); *see also Kuntz v. Aetna Inc.*, No. 10-00877, 2013 WL 2147945, at *12 (E.D. Pa. May 17, 2013). This case does not present exceptional or unusual circumstances that would make an award of prejudgment interest inequitable, and therefore, Reliance must pay prejudgment interest as part of Connelly's benefit award.

Lastly, Connelly requests reasonable attorney fees. While the Court may, in its discretion, award attorneys' fees to prevailing parties in actions brought under ERISA, "[t]here is no presumption that a successful plaintiff in an ERISA suit should receive in an award [of attorney fees] in the absence of exceptional circumstances." *McPherson v. Emp.'s Pension Plan of Am. Re–Ins. Co., Inc.,* 33 F.3d 253, 254 (3d Cir. 1994). A district court must consider five factors in exercising its discretion in connection with fee applications: (1) the offending parties' culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorneys' fees; (3) the deterrent effect of an award of attorneys' fees against the offending parties; (4) the benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' position. *Id.* (citing *Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3d Cir. 1983)). Because the Court must analyze those five factors to make a determination on an attorneys' fee award, any

determination at this point would be premature. Therefore, if Connelly seeks attorneys' fees, she must file a separate attorney fee petition with supporting documentation. *See Kuntz*, No. 10-CV-00877, 2013 WL 2147945, *12.

Given the administrative record and applying a deferential standard of review, Reliance's decision to deny Connelly's long term disability befits is not supported by substantial evidence and is therefore arbitrary and capricious. There are no issues of fact, and Connelly deserves judgment as a matter of law. Connelly's motion for summary judgment will be granted and Reliance's motion for summary judgment will be denied.

An appropriate order follows.

                                                BY THE COURT:

                                                /s/ Juan R. Sánchez
                                                Juan R. Sánchez, J.